UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | 1:14-CR-63 |
| ) | Judges Collier/Lee |
| KIMBERLY A. QUEEN ) | |

### PLEA AGREEMENT

The United States of America, by the United States Attorney for the Eastern District of Tennessee, and the defendant, Kimberly A. Queen, and the defendant's attorney, Gianna Maio, have agreed upon the following:

1. The defendant will plead guilty to the following count in the Indictment:

    a) **Count Two**: Aggravated identity theft in violation of 18 U.S.C. § 1028A(a)(1). The punishment for this offense is as follows: The defendant faces a mandatory minimum sentence of two years' imprisonment, which must be served consecutively with any other sentence imposed, supervised release for up to three years; a fine up to $250,000; any lawful restitution; and a $100 special assessment.

    b) The United States agrees to dismiss the remaining counts against the defendant.

2. The defendant has read the Indictment, discussed the charges and possible defenses with defense counsel, and understands the crime charged. The defendant is pleading guilty because the defendant is in fact guilty.

In order to be guilty, the defendant agrees that each of the following elements of the crime(s) must be proved beyond a reasonable doubt:

    a. The defendant knowingly transferred, possessed, or used;

    b. A means of identification of another person;

    c. Without lawful authority;

    d. The defendant knew the means of identification belonged to another person; and

    e. The defendant transferred, possessed, or used the means of identification during and in relation to a felony enumerated in 18 U.S.C. § 1028A(c), which includes access device fraud in violation 18 U.S.C. § 1029(a)(2)).

3. In support of the defendant's guilty plea, the defendant agrees and stipulates to the following facts, which satisfy the offense elements. These are the facts submitted for purposes of the defendant's guilty plea. They do not necessarily constitute all of the facts in the case. Other facts may be relevant to sentencing. Both the defendant and the United States retain the right to present additional facts to the Court to ensure a fair and appropriate sentence in this case.

    a) Kimberly A. Queen was a volunteer at the Monroe County local chapter of the American Red Cross ("Red Cross") in March 2012. In April 2012, the Red Cross noticed several irregularities when performing a routine audit of the Monroe County local chapter. Specifically, several credit/debit cards intended for disaster victims were missing and appeared to contain excessive charges linked to certain individuals.

    b) At all times material hereto, the Red Cross used credit/debit cards to provide immediate assistance to disaster victims. After a disaster victim reported an incident, such as a fire or tornado, the Red Cross would issue the victim a credit/debit card so that he/she could obtain immediate assistance, such as food, shelter, and clothing. Prior to issuing the credit/debit card, a

Red Cross employee would enter the victim's personal information, including name, date of birth, and drivers' license number, into an electronic database. Once the disaster was verified, the Red Cross activated a credit/debit card and provided it to the victim. Each card came in an envelope with a pin number that allowed the holder of the card to withdraw funds from an ATM if they wanted to use it as a debit card. The card could also be used as a credit card. The credit/debit cards were issued by Chase in the name of the Red Cross and linked to a specific disaster victim. If the victim required additional relief, more funds were placed on the same credit/debit card.

   c) After further investigation, the Red Cross suspected foul play and contacted law enforcement. On May 11, 2012, TBI Special Agent Joshua Melton interviewed Ms. Queen in Athens, Tennessee. Agent Melton advised Ms. Queen of her Miranda Rights and she executed a written waiver. In sum, Ms. Queen confessed to withdrawing funds from local ATMs in Monroe and McMinn County, Tennessee between March 11, 2012 and March 27, 2012 with credit/debit cards issued by Chase in the name of the Red Cross. Ms. Queen admitted she knew the credit/debit cards were allotted for disaster victims and that she was not authorized to possess or use them.

   d) Several of the ATM's Ms. Queen used were equipped with video cameras. Ms. Queen is clearly depicted on several videos withdrawing funds with the credit/debit cards.

   e) Ms. Queen admits that on the following dates she used means of identification for the following individuals, all of whom were disaster victims, to activate the following credit/debit cards:

**Credit/debit card ending in account number 7956 activated on March 21, 2012 and assigned to Ronnie Huskey**

**Credit/debit card ending in account number 9101 activated on March 26, 2012 and assigned to Ronnie Huskey**

**Credit/debit card ending in account number 2847 activated on March 26, 2012 and assigned to Ronnie Huskey**

**Credit/debit card ending in account number 6180 activated on March 15, 2012 and assigned to Richard Brown**

**Credit/debit card ending in account number 2576 activated on March 20, 2012 and assigned to Richard Brown**

**Credit/debit card ending in account number 2923 activated on March 21, 2012 and assigned to Richard Brown**

**Credit/debit card ending in account number 3704 activated on March 26, 2012 and assigned to Marvin Carpenter**

**Credit/debit card ending in account number 7292 activated on March 21, 2012 and assigned to Marvin Carpenter**

**Credit/debit card ending in account number 4409 activated on March 20, 2012 and assigned to Paul Moses**

**Credit/debit card ending in account number 7896 activated on March 21, 2012 and assigned to Paul Moses**

**Credit/debit card ending in account number 6288 activated on March 26, 2012 and assigned to Paul Moses**

f) The electronic database Ms. Queen used to activate the cards contained means of identification, such as names and dates of birth, for each preexisting disaster victim. Ms. Queen pulled up the account for each individual and then activated multiple credit/debit cards for that individual as if the individual had requested the relief himself. Ms. Queen did not have the authority to access the means of identification for the individuals she used to activate the credit/debit cards. Ms. Queen could not have activated the credit/debit cards without the means of identification for each preexisting disaster victim. After Ms. Queen activated the credit/debit cards

through the electronic database, she took them from the Red Cross and used them to withdraw funds from local ATMs in Monroe and McMinn County, Tennessee.

    g)    Ms. Queen admits she knew the means of identification she used to activate the above-referenced credit/debit cards belonged to specific disaster victims.

    h)    Ms. Queen admits she was not authorized to possess or use the above-referenced credit/debit cards.

    i)    Ms. Queen unlawfully and fraudulently obtained in excess of $5,000.00 from the Red Cross in March 2012 by virtue of the above-referenced conduct.

    j)    In total, Ms. Queen unlawfully and fraudulently obtained approximately $27,285.00 from the Red Cross between March 11, 2012 and March 27, 2012 with credit/debit cards issued by Chase in the name of the Red Cross.

    k)    Ms. Queen stipulates that her conduct affected interstate or foreign commerce. Among other things, the credit/debit cards Ms. Queen used to withdraw funds from local ATMs in Monroe and McMinn County, Tennessee were issued by an out-of-state bank, Chase, and the local ATMs Ms. Queen used to withdraw the funds were not affiliated with Chase.

    l)    Most of these events occurred in the Eastern District of Tennessee.

4.    The defendant understands that by pleading guilty the defendant is giving up several rights, including:

    a)    the right to plead not guilty;

    b)    the right to a speedy and public trial by jury;

    c)    the right to assistance of counsel at trial;

d) the right to be presumed innocent and to have the burden of proof placed on the United States to prove the defendant guilty beyond a reasonable doubt;

e) the right to confront and cross-examine witnesses against the defendant;

f) the right to testify on one's own behalf, to present evidence in opposition to the charges and to compel the attendance of witnesses; and

g) the right not to testify and to have that choice not used against the defendant.

5. The parties agree that the appropriate disposition of this case would be the following as to each count:

a) The Court may impose any lawful term(s) of imprisonment, any lawful fine(s), and any lawful term(s) of supervised release up to the statutory maximum(s);

b) The Court will impose special assessment fees as required by law; and

c) The Court may order forfeiture as applicable and restitution as appropriate.

No promises have been made by any representative of the United States to the defendant as to what the sentence will be in this case. Any estimates or predictions made to the defendant by defense counsel or any other person regarding any potential sentence in this case are not binding on the Court, and may not be used as a basis to rescind this plea agreement or withdraw the defendant's guilty plea(s). The defendant understands that the sentence in this case will be determined by the Court after it receives the presentence report from the United States Probation Office and any information presented by the parties. The defendant acknowledges that the sentencing determination will be based upon the entire scope of the defendant's criminal conduct, the defendant's criminal history, and pursuant to other factors and guidelines as set forth in the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553.

6. Given the defendant's agreement to plead guilty, the United States will not oppose a two-level reduction for acceptance of responsibility under the provisions of Section 3E1.1(a) of the Sentencing Guidelines. Further, if the defendant's offense level is 16 or greater, and the defendant is awarded the two-level reduction pursuant to Section 3E1.1(a), the United States agrees to move, at or before the time of sentencing, the Court to decrease the offense level by one additional level pursuant to Section 3E1.1(b) of the Sentencing Guidelines. Should the defendant engage in any conduct or make any statements that are inconsistent with accepting responsibility for the defendant's offense(s), including violations of conditions of release or the commission of additional offenses prior to sentencing, the United States will be free not to make such motion or to withdraw such motion if already made, and will be free to recommend to the Court that the defendant not receive any offense level reduction for acceptance of responsibility under Section 3E1.1 of the Sentencing Guidelines.

7. The defendant agrees to pay the special assessment in this case prior to sentencing.

8. Financial Obligations. The defendant agrees to pay all fines and restitution imposed by the Court to the Clerk of Court. The defendant also agrees that the full fine and/or restitution amount(s) shall be considered due and payable immediately. If the defendant cannot pay the full amount immediately and is placed in custody or under the supervision of the Probation Office at any time, the defendant agrees that the Bureau of Prisons and the Probation Office will have the authority to establish payment schedules to ensure payment of the fine and/or restitution. The defendant further agrees to cooperate fully in efforts to collect any financial obligation imposed by the Court by set-off of federal payments, execution on non-exempt property, and any other means the United States deems appropriate. The defendant and counsel also agree that the defendant may

be contacted post-judgment regarding the collection of any financial obligation imposed by the Court without notifying the defendant's counsel and outside the presence of the defendant's counsel.

In order to facilitate the collection of financial obligations to be imposed with this prosecution, the defendant agrees to disclose fully all assets in which the defendant has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee, or other third party. In furtherance of this agreement, the defendant additionally agrees to the following specific terms and conditions:

a) If so requested by the United States, the defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The defendant promises that such financial statement and disclosures will be complete, accurate, and truthful.

b) The defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report on the defendant in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

c) If so requested by the United States, the defendant will promptly execute authorizations on forms provided by the U.S. Attorney's office to permit the U.S. Attorney's Office to obtain financial and tax records of the defendant.

9. Pursuant to an agreed order of forfeiture and 18 U.S.C. § 982(a)(2)(B), the defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, which are in the possession or control of the defendant or the defendant's nominees that were used and intended to be used in any manner or part to commit and to facilitate the commission of a violation of 18 U.S.C. § 1028A(a)(1), and/or any and all assets and property, or

portions thereof, subject to forfeiture as proceeds of the defendant's criminal activities that are in the possession or control of the defendant or the defendant's nominees. The defendant agrees to forfeit her interest in the following property, including but not limited to:

### Money Judgment

A money judgment in the amount of at least $27,285.00, which represents the minimum proceeds generated from the commission of the offenses alleged in the indictment.
The defendant further agrees to assist the United States fully in the identification, recovery,

and return to United States of any other assets or portions thereof subject to forfeiture or in satisfaction of the money judgment. The defendant further agrees to make a full and complete disclosure of all assets over which the defendant exercises control and those which are held or controlled by a nominee. The defendant agrees to pay a money judgment as described above. These steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and the signing of any other documents necessary to effectuate such transfers. The defendant agrees not to object to any civil or criminal forfeiture brought against these properties. The defendant agrees to take all such steps to locate such properties and to pass title to the United States before the defendant's sentencing.

10. This agreement becomes effective once it is signed by the parties and is not contingent on the defendant's entry of a guilty plea. If the United States violates the terms of this agreement, the defendant will have the right to withdraw from this agreement. If the defendant violates the terms of this agreement in any way (including but not limited to failing to enter guilty plea(s) as agreed herein, moving to withdraw guilty plea(s) after entry, or by violating any court order or any local, state or federal law pending the resolution of this case), then the United States will have the right to void any or all parts of the agreement and may also enforce whatever parts of the agreement it chooses. In addition, the United States may prosecute the defendant for any and all federal

crimes that the defendant committed related to this case, including any charges that were dismissed and any other charges which the United States agreed not to pursue. The defendant expressly waives any statute of limitations defense and any constitutional or statutory speedy trial or double jeopardy defense to such a prosecution. The defendant also understands that a violation of this plea agreement by the defendant does not entitle the defendant to withdraw the defendant's guilty plea(s) in this case.

11. The United States will file a Supplement in this case, as is routinely done in every case, even though there may or may not be any additional terms. If additional terms are included in the Supplement, they are hereby fully incorporated herein.

12. This plea agreement constitutes the full and complete agreement and understanding between the parties concerning the defendant's guilty plea to the above-referenced charge(s), and there are no other agreements, promises, undertakings, or understandings between the defendant and the United States. The parties understand and agree that the terms of this plea agreement can be modified only in writing signed by all of the parties and that any and all other promises, representations, and statements whether made before, contemporaneous with, or after this agreement, are null and void.

|  12/7/14  | By: | WILLIAM C. KILLIAN
UNITED STATES ATTORNEY |
|---|---|---|

Date

_____
Michael D. Porter
Assistant United States Attorney

12-05-2014
Date

_____
Kimberly A. Queen
Defendant

12.5.14
Date

_____
Gianna Maio
Attorney for the Defendant

11